Hear ye, hear ye, hear ye, the United States Court of Appeals for the 11th Circuit is now open to the Court of Law. God save the United States and its Honorable Court. Please be seated. Good morning and welcome to Oral Arguments in the 11th Circuit. We're pleased to have you here today and hear more about your cases. I want to mention that we have five cases on our calendar today, so the plan is to hear three cases and then we'll take a ten-minute break before we hear the last two. You've been told about our traffic light system for timing oral arguments, I know. When the yellow light comes on, just a reminder, you have two minutes remaining in your allotted time, and when the red light comes on, we ask that you quickly bring your remarks to a close, the exception being if you're answering a question from the Court, then you may conclude your answer. Our first case of the morning is number 2214159, United States v. Davion Rivers. Yes, good morning. May it please the Court, Counsel. This is a direct appeal from a criminal case. There's three issues that I have. The district court erred in denying Mr. Rivers' motion to suppress the evidence found following the unlawful entry onto the curtilage of his residence and the subsequent search of his person. The second issue is the district court additionally erred as a matter of law in denying Mr. Rivers' motion to suppress the fruits of the search warrant because the law enforcement affidavit failed to establish probable cause for the issuance of the search warrant for Mr. Rivers' home. The third issue is that the district court erred in applying the Armed Career Criminal Act sentencing provision because the government failed to establish the three proposed predicate offenses were committed on different occasions from one another, and the ACCA was inapplicable because the indictment did not allege all of the facts needed and the jury didn't make the findings necessary to qualify the proposed prior convictions as ACCA predicates. I was Mr. Rivers' third lawyer. The Federal Public Defender, Ms. Casciola, wrote the motions to suppress. CJA panel, Mr. Brown, argued those motions, and he was relieved by Mr. Mr. Howard Anderson from the Federal Public Defender's office did his violation of his supervised release. You are the third lawyer. In your briefing, you had mentioned that the facts, once the police have entered his property and made contact with him, until the police find the evidence, you have said those are hotly contested facts, but you just make that statement in the brief, and then in looking back at the motion to suppress, it says, this is all it says, Mr. Rivers immediately told them to leave. The police contend that they did. Mr. Rivers contends they did not. A subsequent search of his person followed, and a firearm was allegedly located in his pants. How is that hotly contesting the facts, which really boil down to the police officer saying, we saw him, we verbally made contact, he asked us to leave, we did leave, and then we found a firearm when he followed us off his property. How is that really being contested? It is being contested, Your Honor, because the police found him. They entered the property illegally, is our position, and he is on the back porch of the property, and he is sleeping.  But before he wasn't... So you are contesting that they found the firearm on him once he followed them off his  Yes. Where have you contested that? In the motion to suppress, in my briefing. And I know that you are the only place, and it just says, they left immediately, they You are not, nothing is contested about the fact that they found the firearm once he followed them off the property. That's not been... Even in my brief I said we did not agree with that, Your Honor. You made a statement that you did agree, these are hotly contested, but you never specifically, unless you can point me to some place that says we disagree that the firearm was found when he followed them off the property. Can you point me to any place where you have contested that fact? Well, in the trial we did, but as you are saying, to my brief... And the motion to suppress... Well, I beg to differ with you, Your Honor. You don't need to worry about that. I didn't file the... No, I did, in the briefing. Just that it was hotly contested in the evidentiary hearing, we maintain that it was heavily contested, that we did not, we dispute the facts. We always maintain we dispute the facts. I'm going to... This home is in East Bradenton, Florida, and it is a very high crime area. There are pictures in the record, and it's clear you don't contest the officers entered on the side of the property as opposed to the front, correct? No, no, Your Honor. On the side, and you don't contest the pictures that the gate was, the front gate is open with no trespassing. The side entrance, I mean, the pictures are all on the record, in color, it's very clear how it's set up. On the side entrance, the officers came in, and you don't contest that the gate was open at that time. It's not a gate, Your Honor. It's where, it's the driveway. Well, it's the driveway. There's no gate like it is in the front. The gate is, well, not gate, the driveway. There's no gate. But there's an entrance you can go in on the side, right? Well, the customary entrance is in the front. That's my question. Okay. Okay. Listen to my question. I know about the front, it's got gate, it's all locked up, no trespass, but there's a side, everybody comes in the side, there's a driveway on the side, and it comes right to where the porch, where he was, and that is open, correct? There may have been an opening. There's no obstruction, a car could have driven in there. No, I have been to the property. Can you walk in? Yes, you can walk, but there is And that's where the officers walked in, correct? There is no pedestrian walkway there. It's an alley or whatever you want to call it. Is that where the officers came onto the property? Yes, if that's what you're questioning. What do you call it? I would call it a back, a driveway, a driveway, a back driveway. Okay, but it's not open to the public. You don't contest that's where they came in. No, that's correct. I'm sorry if I'm And you don't contest that they actually, forget about how they did it, they found a firearm in his person. Nobody contests that either. Yes, we do. We did, we did in the brief, we did at the trial. So where did they find the firearm? Are you claiming they found no firearm, they made it up? Rivers maintained that he did not have a firearm on his person. But then the fact-finding and the suppression hearing was that he had a firearm, right? Yes. Okay, conflicting testimony. Correct. Okay. And there was also a finding that he followed them, he got up off the porch and came and followed them out. They didn't come up on the porch and find the firearm, right? Nobody claims that. Mr. Rivers claims that they patted him down at that time and nothing, it was found. He didn't have a firearm. Right. The judge resolved all this, right? At the evidentiary hearing, yes.  I'm not sure what that's about. I think you need to address his sentence. Excuse me? Yes, okay. If I could go to that then. All right. I think we all have to agree, we haven't conferred, there's no jury determination. So under recent Supreme Court precedent, you've got an error. The question is whether the error is harmless, it seems to me. And in regard to whether it's harmless, and I'm saying this so the government can be prepared on it, as I understand it, the record shows that these are three sales within, I think it's the 7th, 11th, and 13th of March, right? Correct. But they are in the same neighborhood, is that correct? Yes, I believe so. And it doesn't identify the officer. I've really looked at this record closely. It just says, and the government's got the burden of proof on this enhancement, so the record would say it looks like it's the same officer, or they haven't proved it wasn't the same undercover person. Would you agree with that? I would agree with that. Okay, same officer, same week, same neighborhood. What else have you got about sameness that would make it not different occasions? Or at least enough that you can't say as a matter of law it was harmless, and a jury should be able to do that. Besides, same officer, which I think they're stuck with, same week, same neighborhood, same people. What else is making it not carrying government's burden into it? I would say it's just a continuous criminal, one continuous criminal activity. Were all the locations dictated by the undercover officer according to the transactions? I don't know that. To answer your question, I don't know that. But they were all in the one indictment. They were federal. It was all federal priors in the one indictment. Now... Yeah, that's not unusual here. Right. When it was state stuff, it was federal. Right. One indictment. Right. You know, just yesterday... And very small. And very small. Well, there were different drugs. Okay, so that's going to be what we're going to hear from the government. So what do you say about that? Well, some of them weren't different. I think there was fentanyl found twice and some other drug in very small amounts. I see my time is running out. I don't have any more questions. Okay. You have until 11 for rebuttal. May I please the Court? Karen Haughtman for the United States. Your Honor, listening to my sister's argument and the Court's response, I intend to touch only briefly on the Fourth Amendment suppression issue to clear up a couple of factual issues. To not address, I did not hear this argued, and I don't think that there's any doubt as to the harmlessness on the second suppression issue with the affidavit of the warrant. And then I'll spend the bulk of my time speaking about post-Erlinger harmlessness analysis and address Judge Hull's factual questions. So briefly for the Fourth Amendment issue, what is not contested as well is the fact that Mr. Rivers pushed the officer and that this occurred after. This Court certainly can approach this as a Fourth Amendment issue and determine whether the minimal intrusion on a cartilage was a Fourth Amendment violation. But it also can skip to exclusionary rule. We've briefed that in our brief, I think rather thoroughly, and both the Supreme Court and this Court have stated that that is a separate question. Here, there is no doubt, and I would argue, that the District Court could not actually apply the exclusionary rule on these facts. Mr. Rivers has perhaps a but-for chain of events, and that is it. And the Supreme Court has made clear that that is necessary but not sufficient to apply the exclusionary rule. If Your Honors have no other questions on the Fourth Amendment issue. Turning to the post-Erlinger harmlessness analysis, yes, I believe that we all agree that harmless analysis applies. Did Your Honor agree to error? Oh, yes, Your Honor. We actually said, yes, Your Honor. And below, actually, we agreed that there was error and asked the Court to submit this to the jury. The Court, of course, was bound by the statute to apply the ACCA. So any suggestion that we have invited or helped the Court in this effect, the Court had to apply the statute as written. It did err under the Fifth and Sixth Amendment, now that we know we have Erlinger on the books. So, yes, there was error, Your Honor. Turning to the harmlessness, we've presented a 28-J with this Court's unpublished opinion, which I believe was the first time that it formulated and then applied to the record as a whole, the harmlessness standard. That's in volts. And that says that when there is no doubt on the record as a whole that a jury would have found, beyond a reasonable doubt, different occasions, there is no harm. Judge Hall, you went right for the facts in the record, and I think it's important to realize— The question is really here, could a jury possibly determine, you know, I mean, under no set of circumstances. That's a pretty hard bar for you on this particular issue, it seems to me. Your Honor, I disagree. Okay, but let's not argue this. Yes. We all promise here, you know, we do that all the time. So let's go to the facts here. Is it correct they were all in the same week? What is it, the 7th, the 11th, the 13th? We know that. The 9th, the 13th, and the 17th. Okay, that's right. And then it's based on the government's got the burden. There's no— It seems to me that it was the same undercover officer. You don't dispute that. Did you show otherwise? Your Honor, that's not clear in the record. And if I could— I know she got the burden, so you have to show otherwise. Your Honor, we have the burden to show that nothing in the record suggests otherwise. There are no facts in the record suggesting that this was a different officer. And that's very important on harmlessness review because, yes, we have the burden. You got the burden on that. You got the burden on the ACCA to show the enhancement applies and it was the same. So it seems like, if anything—I'm not going to argue about it. Get in the room. Understood, Your Honor. I don't want to argue about it. But I think the record here is—it says undercover officer. That's all it says. It says the UC. And there are two PSRs to look at, Your Honor. I looked at both of them. Okay. There's no names in them. There are no names in either PSR. I promised you I would look at all of them. So let's say—all right. It's in the same neighborhood, correct? There are three different locations, but I assume— We can Google them all. I assume. Yes, you can Google and say. Sure. We don't dispute that? No. Okay. And I hadn't thought about Judge Pryor's question, like, who set up the place. Do we know from the record? I don't know. I didn't look at that. Do we know who set up the buys? I don't think so, Your Honor. I believe that the defendant set up the buys with other people for each one coming in a different car with a different mixture, necessarily committing— I don't believe so, Your Honor. I think we have— We actually have four different cars because there were two transactions on the 9th— well, three different cars because on the 17th, we don't know about the car they met at a basketball court. It sounds to me like it was on foot, but we certainly don't have a car that is the same as the others. And I'm pointing out these facts because, of course, the analysis is different occasions. The Supreme Court certainly has given us, as the primary and often determinative factor, the dates. But this record has nothing— I haven't seen anything a year apart or at least 30 days apart. I haven't seen any case that's got such close dates as to, like, general criminal activity. That's the concern I have here. No case has done one, two, three all days within the same week where it's the same, for my purposes, undercover officers, same defendant, same location, same small dealing as one continuous course. That's the argument. Understood, Your Honor. And, Your Honor, just mentioned course of conduct versus different occasions. This Court in the 1990s, in the late 1990s, before this was an issue for a sentencing versus a jury trial, began developing the factors, and they did so to determine what different occasions are. Post-Erlinger, we will have to return to what actually those dates mean. This Court in the late 1990s said it clearest that it was looking at whether there was an opportunity for the defendant to cease and desist, to have noticed that they are committing a different offense on a different occasion under due process, and to have an opportunity to stop what they are doing. This record does not suggest in any way a course of conduct or a continuing offense as opposed to three different occasions. It seems to me there was a common scheme here because, as I read the record, each time the undercover officer was the only buyer, and he specified the drugs he wanted to purchase before the meeting, and then three of the four sales, he specified the location for the meeting, and the second sale on March the 9th was a follow-up to the first one. It only occurred because Rivers said he didn't have the drug that the undercover officer wanted. So it seems to me that these crimes were nearly identical. There were different cars, and there were different drugs each time, although there was some overlap. They may be identical offenses for the elements, Your Honor. They were committed on different occasions. The fact that they could have been charged also as part of a scheme and separate offenses, I don't think affects the analysis for different occasions. As you recognized, the court said in Erlinger, no particular lapse of time or distance between offenses automatically separates a single occasion from distinct ones. Correct. And so the question on harmlessness analysis, whether you should send this back, not whether we are proving going forward to the jury, the question is whether it's clear beyond a reasonable doubt on this record that a jury could not have failed to find different occasions. And we argue very strongly that that is true because, again, you start with the dates and then you add everything else. And the court by itself, by the way, expanded this record because it looked to see whether there were other corroborative facts for these dates and for different occasions. It did this itself. It went back to look at the PSR and put it in the record. It went back to look at the R&R for the original guilty plea to make certain that that defendant was on notice of the different dates and the different occasions. It went back to look at the judgment and specifically noted the dates in the judgment. The court did a very good job of making certain that there was nothing in the record that could suggest that these are different occasions. And an argument after the fact for harmlessness that perhaps it could have been argued to a jury and inference, et cetera, does not have a place on harmlessness when you have a record before you that does not suggest that any reasonable, rational jury on reasonable and relevant information in the record would have failed to find beyond a reasonable doubt. Yes, the problem does not suggest. The question is whether it really compels as a matter of law. That's the whole problem here. Your Honor, I don't believe that the Supreme Court in Greer approached harmless error that way. I'm just curious. We have tried to. And I do not have. I actually contacted the district court attorney to see whether the – Have you seen it at all? Oh, have I personally? No. Oh. Yes, yes, the U.S. Attorney's Office and Middle District Court has. With a bifurcated trial. But we're doing so with a bifurcated trial, Your Honor, because, of course, that's going to run up against old chief, et cetera. Correct. So you all are doing that now? Yes. Oh, yes, absolutely. Because we're applying the – we need to apply the ACCA to these armed career criminals. In the next five years, would you be trying it? Oh, absolutely, Your Honor. Absolutely. Well, we have to, but we have to. I understand. Okay. I understand the difference, but the fact is you would be trying this. Yes, but, Your Honor, number one, it's a six-hour trial already. Right.  How many years difference for this? I don't know what the difference is. He had a 188. It's a 15-year minimum versus a 10-year statutory maximum always with the ACCA, yes. But, Your Honor, to return to the. . .  I'm sorry? You answered the questions. Thank you. So go ahead with whatever. Okay. Thank you. Then I will speak to the harmless error standard in Supreme Court case law. This Court in Volz cited Greer. Greer is the premier, what we would point to as in what every court of appeals, I believe, has pointed to post-Erlinger to define the harmless standard for a post-Erlinger, excuse me, for an Erlinger error is Greer. Greer did two important things. It said that you look to the record as a whole. You look to see whether there are relevant and reliable information, is relevant, excuse me, and reliable information in that record. And that that is what you use to determine harmlessness. And that if it's clear that a jury would have found beyond a reasonable doubt, there is no need to, in fact, the court cannot return to the district court because this is, as Volz said, a quote. . . I believe that Volz said or other cases have said a technical error, but it is a determination by the court as opposed to the jury. It obviously is not a structural error and it's very akin to a sentencing factor. These are all, as the Supreme Court said, it often will be extremely, extremely easy to prove to the jury different occasions. And here it certainly would have been, to Judge Hull's point, about what we would have done here. We would have put in those judgments and we would have put in probably the PSR, excuse me, the R&R that the judge looked to. And we would have had quite sufficient and overwhelming evidence that these were on different occasions. When you are in harmlessness, we ask you to do the same because the question is whether you should be returning it despite the district court's error and not whether going forward we can prove the case to the jury. Your Honors, I'd also like to mention, and I think that my sister would join me, if there is a question as to how to determine harmless error after Erlinger, this case has not been supplementary briefed. This court, and I believe we filed a notice with the court, has held several of these cases pending an argument in another case that has been supplementary briefed post-Erlinger. So if there is a question for the court about the proper standard to apply, about how to apply that, about whether Greer applies, we would ask that this court order supplemental briefing at least here so that we can apply the facts to that standard. Nobody addressed the 28J? I'm sorry, addressed what, Your Honor? Harmless error in the 28J. We filed a 28J saying that we noticed supplemental authority, that it was harmless in our first one we did. I'm asking whether your 28J letter addressed harmless error. Yes, Your Honor, our first one and our second. Because it's not addressed here, we should wait on some other case. Yes, Your Honor, for supplemental authority, we are limited to 350 words. I believe we are not supposed to argue on anything that is not supplemental to what has already been argued in the record. That's the problem. We did in our notice notice the court and basically invite this. I don't know what you cited, but I thought you said it was harmless error. We cited Greer, I believe. That's what I'm trying to say. You agreed to what you just argued. You cited in your 28J Greer and said it was harmless error. Your Honor, I apologize. We've had a – I'm just trying to – Right. We would like the opportunity fully to brief the facts against the proper standard and the proper application of the standard, which we certainly haven't had the opportunity to do. And I understand – You don't have to understand it. We need more briefing. I'm sorry? You don't have to understand it. We need more briefing. Okay. I'm sorry, Your Honor. I apologize. I'm just curious. The question is whether if you understand it, you need more briefing? We understand what Greer says, what harmless error is, and what the record is. Yes, Your Honor, but we seem to have had a lot of discussion about exactly how to apply Greer to what facts, whether the facts in the record that are undisputed facts actually suggest, and how to marry that to the standard. So I'm – we would love to have the opportunity to convince Your Honor that, indeed, this is a great – this is a Voltz case. Thank you so much. I understand, Your Honor. Yes, thank you. We have your argument. I understand that the government filed the notice of supplemental authority just yesterday when I was getting on the airplane to come here from Florida about U.S. versus Voltz, stating that the standard for the Erlanger error is harmless error. I just want to point out to the Court that Cogdill, C-O-G-D-I-L-L, found at 2025 Westlaw 67045, the Sixth Circuit in Tennessee, in March 3rd of 2025, found that Erlanger error is structural. Having read the case, Netta, that's saying even a missing element in a crime is not structural, I can assure you this is not structural error. Even where there's not even an element of the crime that's been charged in the indictment and found by the juror, the Supreme Court has said it's not structural. So this is a missing issue, and even though it's jury, it's not structural. Well, I would say under the – the government hasn't met their burden under the harmless error burden. I think that's a good argument. Well, thank you. I mean, they're the best argument. The best argument, okay. I think that's the best argument. Because a very short period of time, and as the case law says, time isn't the only thing to look at. There's no intervening arrests. One other fact, and this is in the July 10th, 2024, letter of response from the government citing the Supreme Court's Wooden case from 2022, that courts have nearly always treated defenses as occurring on separate occasions if a person committed them a day or more apart or at a significant distance. But I think – Certainly not a day or more apart. Yes, Your Honor. But I think Erlanger says now that's not automatic, and that's something that a jury has to determine. And I think it's reasonable to think that these crimes may have been similar or intertwined and should – and shared a common scheme and purpose. And I think a jury could find that, that they weren't separate and they weren't enough for the act of predicate. So I'm going to ask the court to vacate the sentence and remand the case to the district court for a new sentencing, not imposing the ACCA. Thank you.